136 N.J. Super. 85 (1975)
344 A.2d 344
FRANK H. TAYLOR AND SON, INC., PLAINTIFF-APPELLANT,
v.
SEYMOUR D. SHEPARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1975.
Decided September 3, 1975.
*86 Before Judges COLLESTER, LORA and HANDLER.
Messrs. McElroy, Connell, Foley & Geiser, attorneys for appellant (Mr. Theodore W. Geiser, of counsel and on the brief).
Messrs. De Sevo, Cerutti & Lombardi, attorneys for respondent (Mr. Floyd F. Lombardi on the brief).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
*87 This is a legal malpractice suit. Plaintiff appeals from a judgment entered on a jury verdict of no cause for action in favor of defendant, an attorney at law of this State.
On March 17, 1966 plaintiff entered into a construction mortgage agreement with Belvidere Manor, Inc. and Anderson Construction Co. (hereinafter Belvidere). Under the terms of the agreement plaintiff was to advance monies to Belvidere to be used in the construction of garden apartments in Warren County. The agreement called for plaintiff to make periodic progress payments to Belvidere upon certification by the architect of the project at various stages of construction and upon approval of defendant, plaintiff's attorney, whose responsibility it was to determine that the payment made by plaintiff would continue to be a first lien on the mortgaged property. The progress payments were to be used only for the construction of the housing project.
On April 6, 1966 Belvidere assigned the payments due under the construction mortgage agreement to the Englewood National Bank and Trust Company (hereinafter bank) as security for a loan by the bank to Belvidere, the proceeds of which were also to be used in the construction of the project. Plaintiff refused to honor the assignment and on April 11 and April 28, 1966 paid over progress payments due under the construction mortgage agreement to Belvidere. Shortly thereafter Belvidere became insolvent. The bank sued plaintiff for its refusal to honor the assignment, and as a result of a judgment entered in favor of the bank, plaintiff was required to pay $37,700 together with interest.
Plaintiff brought a malpractice suit against defendant to recover the money it was required to pay and for legal expenses incurred in defending that litigation. Plaintiff alleged it sustained such damages as a result of the negligence of defendant in wrongly advising it not to honor the assignment to the bank and to make progress payments to Belvidere. Defendant denied that he was negligent and raised the defense of contributory negligence. He alleged that he had *88 exercised the skill and care required of him in his profession.
During the trial defendant, who had been plaintiff's counsel in matters relating to real estate and mortgage financing for 25 years, conceded that he had advised plaintiff not to honor the assignment. He testified that he had researched the law concerning the assignment of moneys payable under the terms of a construction mortgage and while he had found no relevant judicial decisions he had concluded that such an assignment was invalid. He based his opinion, in part, upon the fact that the construction mortgage agreement contained a provision that the agreement was not assignable, and further, that if the assignment was honored plaintiff would lose control of the distribution of the construction loan funds which should be used to pay for materialmen, labor and equipment on the Warren County project and that the funds might be diverted to another project being constructed by Belvidere in Sussex County. He was also concerned that if payments were not made to Belvidere in accordance with the construction mortgage agreement the monies paid under the assignment would lose their priority as a first lien on the mortgaged property.
Each party called expert witnesses to testify on their behalf. Both experts said they were never faced with the legal question which confronted defendant in this case. Plaintiff's expert testified that defendant's conduct varied from the usual accepted standard of the legal profession under the same or similar circumstances. He disagreed with defendant's conclusion that the construction mortgage proceeds were not assignable. He expressed the view that defendant should have advised plaintiff to draw checks for the payments to both Belvidere and the bank and to let them "fight it out" as to who was going to get the proceeds or that defendant should have advised his client to start an interpleader suit.
Defendant's expert testified that the disbursement of funds authorized by defendant was in accordance with the standards that would be followed by an attorney who was *89 experienced in this field. He agreed with defendant that if the construction mortgage funds were diverted under the assignment plaintiff's priority of lien for such payments would be subject to attack by the second mortgagee, subcontractors, materialmen and laborers employed in the event of a mortgage foreclosure. He indicated that if checks for payments had been made out to both Belvidere and the bank or an interpleader action was filed by plaintiff the project would go "down the drain" because of the delay and Taylor might have been held liable for not honoring the mortgage commitment. He expressed the opinion that in view of the lack of law regarding the situation at the time defendant exercised reasonable care for the protection of his client's interests.
The jury returned a verdict in favor of defendant, and plaintiff's motion for a judgment notwithstanding the verdict or a new trial were denied. This appeal followed.
Plaintiff initially contends the trial judge erred in denying its motion for judgment at the close of all the evidence and its subsequent motion for judgment notwithstanding the verdict. It argues there was no disputed question of fact and the judge should have ruled as a matter of law that defendant did not exercise the reasonable skill and care normally practiced by competent attorneys when he advised plaintiff not to honor the assignment of the construction mortgage progress payments to the Bank.
We do not agree. In an action against an attorney for malpractice it is the duty of the judge to instruct the jury as to the degree of negligence or want of skill for which the attorney is properly answerable, and what duty is imposed on him by law. It then becomes the responsibility of the jury to determine on all the facts and circumstances of the case whether the attorney has performed that duty, and, if not, whether the neglect or want of skill was of a character or degree that would render the attorney liable. 7 Am. Jur.2d, § 189 at 157. See also McCullough v. Sullivan, 102 N.J.L. 381, 385 (E. & A. 1925).
*90 The standard of care governing an attorney in the practice of his profession in this State is set forth in McCullough v. Sullivan, supra, where the court stated:
A lawyer, without express agreement, is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct, or that the instruments he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice. He does, however, undertake in the practice of his profession of the law that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession. He contracts to use the reasonable knowledge and skill in the transaction of business which lawyers of ordinary ability and skill possess and exercise. On the one hand he is not to be held accountable for the consequences of every act which may be held to be an error by the court. On the other hand, he is not immune from the responsibility, if he fails to employ in the work he undertakes that reasonable knowledge and skill exercised by lawyers of ordinary ability and skill. The duties and liabilities between an attorney and his client are the same as those between a physician and his patient. Both the attorney and physician are required to exercise that reasonable knowledge and skill ordinarily possessed and exercised by others in their respective professions. [at 384]
The test to be applied by the trial judge on a motion for judgment at the close of all the evidence or on a motion for judgment notwithstanding the verdict is whether the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor of the party opposing the motion. If, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Dolson v. Anastasia, 55 N.J. 2 (1969). In the instant case the issue of whether defendant violated the standard of care referred to in McCullough v. Sullivan, supra, was sharply controverted by the evidence offered by the parties. Reasonable minds could differ in the resolution of the issue. The jury was entitled to conclude upon the evidence and expert testimony *91 that Shepard was not negligent because he was of the view that the assignment was ineffective and that if honored would jeopardize his client's interests. Applying the Dolson test to the facts presented in this case it is clear that the trial judge properly denied plaintiff's motion for judgment at the close of the case and the motion for judgment n.o.v.
Plaintiff also claims the judge erred in failing to grant his motion for a new trial. It argues that the jury's conclusion that defendant was free from negligence indicates an erroneous understanding of the professional standards to be applied. We find no support for this argument in the record. The trial judge clearly and comprehensively instructed the jury concerning the legal principles which applied, and the jury found that defendant did not negligently violate any standard of legal practice on the evidence presented in this case. From our review of the record we conclude the trial court properly denied the motion for a new trial and there was no miscarriage of justice under the law. R. 2:10-1.
It is urged that the trial judge erred by including the issue of contributory negligence in its charge to the jury. The record indicates the court submitted special interrogatories to the jury, the first of which was, "Did the defendant negligently depart from any standard of practice in the circumstances of this case?" The jury was instructed that if it answered the question in the negative it was not required to answer the three remaining interrogatories which dealt with proximate cause, contributory negligence, and damages. The jury answered the first interrogatory in the negative and having done so did not answer the three remaining interrogatories. It is thus clear that the jury did not reach or consider the question of plaintiff's contributory negligence. Under the circumstances we are satisfied that plaintiff sustained no prejudicial error because of the inclusion of the issue of contributory negligence in the court's charge.
*92 Finally, in a supplemental brief, plaintiff argues that the charge and the special interrogatories submitted to the jury were misleading. Since no objections to the charge on this ground nor to the interrogatories were made below, these points necessarily are raised as plain error. R. 2:10-2. We have considered the arguments advanced and conclude that they are devoid of merit.
Affirmed.