448 So.2d 1127 (1984)
Emil J. WEIMAN and Joyce E. Weiman, His Wife, Appellants,
v.
Thomas N. McHAFFIE and Jacqueline M. McHaffie, His Wife, Appellees.
No. AT-476.
District Court of Appeal of Florida, First District.
April 6, 1984.
Rehearing Denied May 3, 1984.
Ray D. Helpling of Scruggs & Carmichael, Gainesville, for appellants.
H. Reynolds Sampson, Tallahassee, for appellees.
SMITH, Judge.
In a declaratory judgment action below, the trial court rendered a final judgment finding that a provision in the nature of a "due-on-sale" clause contained in a mortgage given by the McHaffies (appellees-mortgagors, hereafter "McHaffies") to the Weimans (appellants-mortgagees, hereafter "Weimans") is unenforceable. We affirm the finding of non-enforceability, in part, but not on the same grounds relied upon by the trial court.
The facts are that the McHaffies purchased a home from the Weimans on September 8, 1980, giving them a purchase money mortgage which contained the following provision:
If any part of the property or any interest therein is sold or transferred by the mortgagor without the prior written consent of the mortgagee, the mortgagee, at the mortgagee's option, may declare all sums secured by this mortgage to be immediately due and payable.
Later, Mr. McHaffie's job required the family to move to Tallahassee. The McHaffies requested permission from the Weimans to sell subject to the mortgage. When the Weimans refused, the McHaffies filed a declaratory judgment action seeking a determination that the Weimans' refusal was unreasonable and an order authorizing *1128 sale subject to the mortgage. The Weimans appeal from the adverse judgment entered in that proceeding.
Resolution of the issues in this case requires our consideration of the status of Florida law with respect to the so-called "due-on-sale" mortgage clause including the effect, if any, of federal legislation on the subject, specifically, the Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97-320 (October 15, 1982).[1]
The law in Florida at the time this mortgage was executed (September 8, 1980) required the mortgagee to show that the transfer of the mortgaged property would somehow impair the lender's security, before a due-on-sale clause would be enforced. First Federal Savings and Loan Association v. Lockwood, 385 So.2d 156 (Fla. 2nd DCA 1980).[2] However, in Fidelity Federal Savings and Loan Association v. de la Cuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), the Supreme Court held that the Federal Loan Bank Board's regulation, effective July 31, 1976, authorizing due-on-sale clauses in the loan contracts of federal savings and loan associations, preempted conflicting state limitations on the due-on-sale practices of federal savings and loan associations. Nevertheless, this decision merely requires the enforcement of due-on-sale clauses (without a showing of impairment of the lender's security) if a federal mortgage is involved and the mortgage was executed after the effective date of the federal regulation. See Orange Federal Savings and Loan Association v. Dykes, 433 So.2d 642 (Fla. 5th DCA 1983); and Consolidated Capital Properties, II, Ltd. v. National Bank of North America, 420 So.2d 618 (Fla. 5th DCA 1982). The Weimans are private mortgage lenders. Accordingly, we find that under Florida law at the time this September 8, 1980 mortgage was executed, as reflected by these cases, enforceability of the due-on-sale clause was dependent upon the Weimans' showing that the McHaffies' transfer of the mortgaged property would impair their security.
However, our inquiry does not end here. On October 15, 1982, the Garn-St. Germain depository Institutions Act of 1982 was signed into law by President Reagan. One of the more important provisions in this law, 12 U.S.C. § 1701j-3, provides an unqualified authorization for due-on-sale enforcement by all types of mortgage lenders on all new loan transactions. The law applies retroactively to mortgage loan contracts already in existence except in those states where there is a constitutional provision or statute prohibiting or restricting the exercise of due-on-sale clauses or where the highest court of the state has rendered a decision resulting in a final judgment prohibiting such exercise (or if the highest court has not yet so decided, the next highest appellate court has rendered a decision resulting in a final judgment if such decision applies statewide). 12 U.S.C. § 1701j-3(c)(1). In these states, the Act creates a "window period" of three years within which the mandate does not apply. The conference report of the draftsmen indicates that the authors of the legislation felt that Florida (among other states) was not a "window period" state based upon their assumption that the judicial decisions in this state on the subject (being from the district courts of appeal) do not apply statewide. S.Rep. No. 97-536, 97th Cong., 2d Sess. 21, 23 reprinted in 1982 U.S.Code Cong. & Ad.News 3054, 3077. As noted below, we do not agree.
In the final judgment on review, the court held that the Garn-St. Germain Depository Institutions Act unconstitutionally preempted state law as it relates to the ability of individuals within the state to contract with each other. Although the Weimans assign this ruling as an error in their brief, they do not discuss the power of Congress to preempt this particular field *1129 of commerce or whether Florida has any jurisdiction in this field over which Congress has exerted its exclusive control. Under the circumstances we decline to address this particular constitutional question. Miami v. Steckloff, 111 So.2d 446 (Fla. 1959).
Moreover, we find that the trial court needlessly reached this constitutional question. Despite the fact that the draftsmen of this legislation felt that this law applies retroactively in Florida, we find that Florida falls within the definition of a "window period" state. The decision of the Second District Court of Appeal in Lockwood, supra, as modified by the United States Supreme Court's decision in de la Cuesta, and the subsequent decisions of the other District Courts of Appeal in Woodcrest Apartments, Ltd., supra, and Consolidated Capital Properties, II, Ltd., supra, do have statewide application since there were no conflicting Supreme Court or District Court of Appeal decisions on this point. See Chapman v. Pinellas County, 423 So.2d 578, 480 (Fla. 2nd DCA 1982); Dillon v. Chapman, 404 So.2d 354 (Fla. 5th DCA 1981); Stanfill v. State, 384 So.2d 141 (Fla. 1980); and State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976).[3] Since the McHaffies' attempt to alienate their property fell within three years after October 15, 1982, they are entitled to require the Weimans to show an impairment of their security before the due-on-sale clause may be enforced.
We find that the other grounds relied upon by the trial court in its final judgment finding this clause unenforceable are without merit and we see no need to discuss them. Since the issue of whether the Weimans' security will be impaired if the property is transferred was not tried below, we remand to the trial court for a determination on this issue. However, because the question involved in this appeal has far-reaching implications for certain financial institutions and the people of this state we certify the following question to the Florida Supreme Court:
IS A DUE-ON-SALE CLAUSE IN A FLORIDA MORTGAGE EXECUTED ON SEPTEMBER 8, 1980, TO A PRIVATE LENDER OR SELLER, ENFORCEABLE AS TO AN ATTEMPTED TRANSFER OCCURRING SUBSEQUENT TO OCTOBER 15, 1982, BUT BEFORE OCTOBER 15, 1985, WITHOUT A SHOWING THAT THE MORTGAGEE'S SECURITY WILL BE IMPAIRED BY THE TRANSFER?
WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] See Sanders, Congress Legislates on "Due-on-Sale" Mortgage Clauses, Fla.B.J. January, 1983 p. 53.
[2] This court later adopted the reasoning of Lockwood in Woodcrest Apartments, Ltd. v. IPA Realty Partners Richardson Palmer, 3rd Investment KG, 397 So.2d 364 (Fla. 1st DCA 1981).
[3] Our decision is in accord with the only other state court decision we have found that has considered the same point. Scappaticci v. Southwest Savings and Loan Ass'n., 135 Ariz. 456, 662 P.2d 131 (1983).