529 So.2d 1183 (1988)
David J. STAKE and Deborah S. Stake, His Wife, Appellants,
v.
Bruce M. HARLAN, Appellee.
No. 87-2714.
District Court of Appeal of Florida, Second District.
July 13, 1988.
Rehearing Denied August 25, 1988.
*1184 Philip J. Maloney, Jr. of Ruiz, Skelton & Maloney, P.A., Tampa, for appellants.
John N. Jenkins of Marlow, Shofi, Smith, Hennen, Smith & Jenkins, P.A., Tampa, for appellee.
LEHAN, Judge.
Plaintiffs appeal from the dismissal with prejudice of their amended complaint for legal malpractice. We reverse.
Negligence on the part of defendant attorney is alleged to have occurred through his advice to, and failure to advise, plaintiffs in connection with his representation of them in their purchase of a condominium unit. That purchase on April 11, 1985, involved their paying $5,000 cash, executing a promissory note for $12,000 secured by a balloon purchase money second mortgage due in 1990, and assuming a first mortgage which contained a "due-on-sale" clause. That clause required the prior written consent of the first mortgagee to plaintiffs' assumption of the mortgage.[1]
The amended complaint alleges that:
(a) Plaintiffs retained defendant as their attorney "for a compensation to be paid him therefore [sic], to review all documents pertaining to the purchase of certain condominium unit... to protect their interests in the subject transaction: to advise them concerning the execution of certain documents relative to the subject transaction; and to represent them at the closing on the purchase of said unit... ."
(b) Defendant advised plaintiffs that they need not comply with the assumption procedure required by the due-on-sale clause in the first mortgage and could effectuate a "quiet assumption" of that mortgage by tendering to the mortgagee the next monthly payment and informing the mortgagee that upon its acceptance of that payment, they would assume that the mortgagee had acquiesced to the purchase of the unit by plaintiffs. In addition, defendant advised plaintiffs to execute a release and hold harmless agreement, holding the sellers and the title company harmless from any responsibility should the mortgagee declare the mortgage due and payable in full. Plaintiffs closed the purchase under those circumstances and executed such a hold harmless agreement.
(c) At the time of defendant's foregoing advice to plaintiffs and of the closing of the purchase of the condominium unit, Florida law was reflected in Weiman v. McHaffie, 448 So.2d 1127 (Fla. 1st DCA 1984), hereinafter called "Weiman I." In that case the First District Court of Appeal, consistent with other district court of appeal decisions, held that due-on-sale clauses in mortgages are not enforceable in Florida without a showing that the mortgagor's transfer of the mortgaged property would impair the mortgagee's security.
(d) Weiman I certified to the Florida Supreme Court as of great public importance the question of the enforceability of such a clause.[2]
(e) Defendant had actual knowledge of the Weiman I certification as evidenced by his citation of that case in his letter to the first *1185 mortgage holder tendering plaintiffs' monthly mortgage payment.
(f) On May 2, 1985, in Weiman v. McHaffie, 470 So.2d 682 (Fla. 1985), hereinafter "Weiman II," the Florida Supreme Court, answering that certified question in the affirmative, changed the law of Florida by deciding that such clauses are enforceable pursuant to their terms.
(g) Following the decision in Weiman II the holder of the first mortgage declared the entire sum due and payable. After plaintiffs' failure to pay, the mortgagee filed a foreclosure suit. Judgment of foreclosure was entered, resulting in loss to plaintiffs. As a result of plaintiffs' agreement to release and hold harmless the sellers, plaintiffs had no recourse against the sellers for their loss upon the foreclosure.
(h) Defendant breached his duty to make plaintiffs aware of the implications of the Weiman I certification "so that the Plaintiffs could make an informed decision whether or not to ... transact the subject real estate closing in the manner suggested by the Defendant."
The basis for the trial court's dismissal with prejudice appears to have been that "the gravamen of the amended complaint against the Defendant ... continues to be an allegation that he was under a duty to anticipate changes in the law of this State by this State's highest Court... ." and that no such duty existed. The effect of the dismissal was to rule that there was no duty of defendant attorney to advise his clients of a possible change in the law even though he knew of that possibility from his knowledge of the certification by the district court of appeal. This was in effect an erroneous ruling under the alleged circumstances of this case that as a matter of law an attorney has no duty to give his clients the benefit of knowledge which he has and on the basis of which it may be foreseeable to him that the clients, if they had that knowledge, would avoid acting to their material detriment.
Circumstances under which an attorney does and does not have a duty to his client are generally described in Feil v. Wishek, 193 N.W.2d 218, 224 (N.D. 1972), quoting McCullough v. Sullivan, 102 N.J.L. 381, 384, 132 A. 102, 103 (1926), as follows:
A lawyer, without express agreement, is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct, or that the instruments he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice. He does, however, undertake in the practice of his profession of the law that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession. He contracts to use the resonable [sic] knowledge and skill in the transaction of business which lawyers of ordinary ability, and skill possess and exercise. On the one hand, he is not to be held accountable for the consequences of every act which may be held to be an error by a court. On the other hand, he is not immune from responsibility, if he fails to employ in the work he undertakes that reasonable knowledge and skill exercised by lawyers of ordinary ability and skill.
See also 4 Fla.Jur.2d Attorneys at Law § 168 (1978).
Defendant argues that Kaufman v. Stephen Cahen P.A., 507 So.2d 1152 (Fla. 3d DCA 1987), supports the trial court's dismissal because Kaufman held that a lawyer has no duty to predict accurately a change in the law. That holding reflected the principle that "[a] lawyer does not guarantee the efficacy of his advice." Dillard Smith Construction Co. v. Greene, 337 So.2d 841, 843 (Fla. 1st DCA 1976). See also Daytona Development Corp. v. McFarland, 505 So.2d 464, 467 (Fla. 2d DCA 1987). But our holding does not depart from that principle. The basic issue on this appeal is not whether defendant had no duty to accurately predict a change in the law but is whether he had as a matter of law no duty to inform his clients of his awareness of a possible change in the law which could have a materially adverse effect upon them. By its certification *1186 to the Florida Supreme Court quoted above, the First District Court of Appeal called attention to that possibility and also called attention to its significance by saying that "the question... has far-reaching implications for ... the people of this state... ." Weiman I, 448 So.2d at 1129.
Defendant nonetheless argues that the types of facts in Kaufman and those in the instant case are nearly identical in the sense that Kaufman also involved a supreme court decision which changed the law and which was pending at the time the defendant in that case rendered legal services. However, Kaufman involved a significantly different type of situation. Kaufman involved the law regarding the statute of limitations for a wrongful death action based upon medical malpractice having been changed by the Florida Supreme Court, so as to shorten the applicable limitations period and bar plaintiff's right to sue, apparently without there having been advance knowledge on the part of plaintiff's attorney, whether through a certified question or other means, that such a change might occur. Here, it is alleged that the defendant was aware of the pending question which had been certified in Weiman I.
This is not to indicate, or address whether, a lawyer may ever have a duty to be aware of questions certified by district courts of appeal to the Florida Supreme Court. That is not before us. Nor are other issues in a case like this, such as, proximate cause and damages, before us. See Ard v. Aulls, 477 So.2d 1032 (Fla. 5th DCA 1985).
Reversed and remanded for proceedings consistent herewith.
RYDER, A.C.J., concurs specially with opinion.
FRANK, J., concurs specially with opinion.
RYDER, Acting Chief Judge, concurring specially.
I concur in the result reached herein, but for different reasons. This case comes to us on appeal from a bare bones order granting a motion to dismiss for failure to state a cause of action.
I find it unnecessary to go further in this matter than a review of the question whether the complaint stated a cause of action and, if so, whether the trial court erred in his dismissal order.
"A legal malpractice cause of action has three elements: (1) the attorney's employment and (2) his neglect of a reasonable duty, which (3) is the proximate cause of loss to his client." Hatcher v. Roberts, 478 So.2d 1083, 1087 (Fla. 1st DCA 1985). My review of the second amended complaint reveals allegations fulfilling all elements. Thus, I would reverse and set aside the order of the trial court and allow the cause to proceed accordingly. To go further at this juncture seems ill-advised and untimely wherein we address ultimate issues which should be allowed to develop in subsequent proceeding below.
FRANK, Judge, concurring specially.
It is my opinion, simply stated, that although a lawyer cannot be held to a standard requiring certainty in anticipating the future state of the law, or an awareness of every question certified to a higher tribunal, when, as is the case here, the lawyer has actual knowledge that a question of law bearing upon a client's interests has been certified, a duty arises to advise the client that such certification may result in a change of the law.
NOTES
[1] A due-on-sale clause is "a contractual provision that permits the lender to declare the entire balance of a loan immediately due and payable if the property securing the loan is sold or otherwise transferred." Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 145, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664, 669 (1982).
[2] The language of the First District in that regard was:

However, because the question involved in this appeal has far-reaching implications for certain financial institutions and the people of this state we certify the following question to the Florida Supreme Court:
IS A DUE-ON-SALE CLAUSE IN A FLORIDA MORTGAGE EXECUTED ON SEPTEMBER 8, 1980, TO A PRIVATE LENDER OR SELLER, ENFORCEABLE AS TO AN ATTEMPTED TRANSFER OCCURRING SUBSEQUENT TO OCTOBER 15, 1982, BUT BEFORE OCTOBER 15, 1985, WITHOUT A SHOWING THAT THE MORTGAGEE'S SECURITY WILL BE IMPAIRED BY THE TRANSFER?